IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

PHILLIP BRADLEY HUNNINGS,

    Plaintiff,

v.

TRAVELERS INSURANCE GROUP
HOLDINGS, INC.; TRAVELERS
INSURANCE GROUP HOLDINGS, INC.
d/b/a TRAVELERS INSURANCE
COMPANY; and ST. PAUL MERCURY
INSURANCE COMPANY,

    Defendants.

CIVIL ACTION NO.: 4:19-cv-151

## **O R D E R**

Presently before the Court is Defendant St. Paul Mercury Insurance Company's (hereinafter "St. Paul") Motion to Dismiss, (doc. 13).[1] Plaintiff Phillip Hunnings originally filed

---

[1] Defendants Travelers Insurance Group Holdings, Inc. and Travelers Insurance Group Holdings, Inc. d/b/a Travelers Insurance Company (collectively, "Travelers Insurance Entities") filed a separate Motion to Dismiss. (Doc. 14.) However, Plaintiff subsequently filed a Motion to Dismiss all claims against the Travelers Insurance Entities under Federal Rule of Civil Procedure 41(a)(2). (Doc. 24.) "The basic purpose of Rule 41(a)(2) is to freely permit the plaintiff, with court approval, to voluntarily dismiss an action so long as no other party will be prejudiced." LeCompte v. Mr. Chip, Inc., 528 F.2d 601, 604 (5th Cir. 1976); see also Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (all decisions of the former United States Court of Appeals for the Fifth Circuit decided prior to October 1, 1981 are binding precedent for the United States Court of Appeals for the Eleventh Circuit). To determine whether a defendant will be prejudiced by the dismissal, a court may consider several factors such "as the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and whether a motion for summary judgment has been filed by the defendant." Grover v. Eli Lilly & Co., 33 F.3d 716, 718 (6th Cir. 1994). Here, the factors weigh in favor of granting Plaintiff's Motion. Plaintiff filed its Motion early in the litigation process before the Travelers Insurance Entities filed a motion for summary judgment. In addition, the Travelers Insurance Entities do not oppose the motion or cite any expenses made for trial. Indeed, both of these Defendants signed Plaintiff's motion to show their consent to it. (Doc. 24, p. 3.) Accordingly, the Court **GRANTS** Plaintiff's Motion, (doc. 24), and **DENIES AS MOOT** the Travelers Insurance Entities' Motion, (doc. 14). The Court **DISMISSES** all claims against Defendants Travelers Insurance Group

this suit in the State Court of Chatham County, and St. Paul subsequently removed the case to this Court. (Doc. 2.) Plaintiff asserts various state law claims arising from St. Paul's alleged failure to defend and/or indemnify him in a separate legal proceeding. (See doc. 2-2.) For the reasons explained herein, the Court **GRANTS IN PART** and **DENIES IN PART** St. Paul's Motion. (Doc. 13.) Specifically, the Court **DISMISSES** Counts I, II, IV, and V of Plaintiff's Complaint. (Doc. 2-2.) Count III will remain pending before the Court.

## BACKGROUND

Plaintiff was a loan officer at Darby Bank & Trust Company who was purportedly insured by St. Paul. (Doc. 2-2, pp. 5, 8.) This action arises out of St. Paul's alleged failure to continue paying for Plaintiff's defense and for not indemnifying Plaintiff after he was sued over his management of some loans. (Id. at pp. 9–10.)

In 2006, Darby Bank & Trust Company extended two loans to a business entity called ABL Lofts which in turned used these loans so another business entity, 300 West Broughton, LLC (hereinafter "West Broughton"), could finance a real estate project. (Id. at p. 6.) Plaintiff "administered and managed" these loans. (Id. at p. 7.) Three years later, members of West Broughton sued Plaintiff and his employer claiming that they "had committed acts of misfeasance with respect to oversight administration of the loan proceeds." (Id.)

At the time of this suit, Plaintiff asserts he had an insurance policy issued by St. Paul. (Id. at p. 8.) According to the Amended Complaint, the insurance policy provided for six million dollars or more a year in coverage and required St. Paul "to indemnify [Plaintiff] for losses covered by the policy, and to pay for the defense of [Plaintiff]." (Id. at p. 9.) The insurance policy allegedly covered West Broughton's claim against Plaintiff. (Id.)

---

Holdings, Inc. and Travelers Insurance Group Holdings, Inc. d/b/a Travelers Insurance Company, and directs the Clerk of Court to terminate these Defendants on the docket of this case.

St. Paul provided a defense for Plaintiff which eventually ended when the case was dismissed without prejudice, and St. Paul initially paid to defend Plaintiff when West Broughton renewed its claim (hereinafter the "Renewal Action"). (Id. at pp. 8–9.) Allegedly during this time, the plaintiffs in the Renewal Action "made numerous demands for settlement." (Id. at p. 10.) However, Plaintiff asserts that in May 2016, St. Paul stopped funding his defense. (Id.) After this, Plaintiff did not have the funds to continue paying for his representation which forced him "to resolve the litigation" resulting in a "consent judgment of $6,000,000 against" him. (Id.)

On May 20, 2019, Plaintiff filed suit against St. Paul in the State Court of Chatham County. (See doc. 2-2.) Plaintiff filed an Amended Complaint two days later.[2] (Id. at p. 17.) He makes several claims against St. Paul including bad faith failure to defend (Count I), negligence (Count II), and breach of contract (Count III). (Id. at pp. 11–14.) Plaintiff also seeks attorneys' fees (Count IV) and punitive damages (Count V). (Id. at p. 14.) St. Paul then removed the case to this Court. (Doc. 2.) Once in federal court, St. Paul filed its Motion to Dismiss. (Doc. 13.) Plaintiff filed a Response to St. Paul's Motion to Dismiss, (doc. 20), and St. Paul filed a Reply, (doc. 23).

## LEGAL STANDARD

Upon a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), such as the County's Motion here, a court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009) (citing Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262

---

[2] The only purpose of the Amended Complaint was to attach "Exhibit 'A' which was inadvertently admitted from the original filing." (Doc. 2-2, p. 17.) Since the Amended Complaint refers to the Original Complaint and only attaches an exhibit, the Court reads the Amended Complaint as incorporating the allegations in the Original Complaint rather than superseding them which is the rule under either Georgia or federal law. See Hill v. Bd. of Regents of the Univ. Sys. of Ga., 829 S.E.2d 193, 203 (Ga. Ct. App. 2019) ("'As a general rule an amended complaint supersedes and replaces the original complaint, unless the amendment specifically refers to or adopts the earlier pleading.'") (quoting Wilson v. First Houston Inv. Corp., 566 F.2d 1235, 1238–39 (5th Cir. 1978), *vacated on other grounds by,* 444 U.S. 959 (1979)).

(11th Cir. 2004)).  A complaint must state a facially plausible claim for relief, and "'[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" does not suffice.  Ashcroft, 556 U.S. at 678 (internal quotations omitted).

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  Id. (internal punctuation and citation omitted).  While a court must accept all factual allegations in a complaint as true, this tenet "is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient.  Id. (internal citation omitted).  In addition, when a dispositive issue of law allows for no construction of the complaint's allegation to support the cause of action, dismissal is appropriate.  Neitzke v. Williams, 490 U.S. 319, 326 (1989).

**DISCUSSION**

**I.      Overview of Plaintiff's Claims**

In his Amended Complaint, Plaintiff alleges various violations of Georgia law.  (Doc. 2-2, pp. 11–14.)  He asserts that St. Paul is liable for breach of contract because the insurance company failed to continue paying for his defense and because it did not indemnify him even though the insurance policy allegedly required St. Paul to do both.  (Id. at pp 13–14.)  Plaintiff also alleges that St. Paul acted negligently because it "failed to take reasonable action to resolve [the Renewal Action] and to protect" him.  (Id. at p. 12.)  In addition, Plaintiff brings a bad faith failure to defend

4

claim which is based on the same allegations that Plaintiff asserts in his breach of contract and negligence claims. (Id. at pp. 11–12.) Finally, Plaintiff requests attorneys' fees and punitive damages. (Id. at p. 14.) St. Paul has moved to dismiss all of these claims. (Doc. 13.) The Court will address each of these claims in turn.

**II.    Choice of Law**

In this diversity action, the Court must apply the choice-of-law rules of its forum state of Georgia to determine which state's substantive laws apply. Boardman Petroleum, Inc. v. Federated Mut. Ins. Co., 135 F.3d 750, 752 (11th Cir. 1998). Here, Plaintiff's claims resound in contract and tort. "[I]n contract cases, [Georgia] follows the traditional doctrine of *lex loci contractus:* contracts are 'governed as to their nature, validity and interpretation by the law of the place where they were made' unless the contract is to be performed in a state other than that in which it was made." Id. (quoting Gen. Tel. Co. of Se. v. Trimm, 311 S.E.2d 460, 461 (Ga. 1984)). As is relevant here, Georgia law considers "an insurance contract [to be] 'made' where it is delivered." Travelers Prop. Cas. Co. of Am. v. Moore, 763 F.3d 1265, 1271 (11th Cir. 2014) (quoting Boardman Petroleum, 135 F.3d at 752). The Amended Complaint states that St. Paul sold insurance in Chatham County, Georgia. (Doc. 2-2, p. 5.) It also asserts that the company issued Plaintiff a policy, and that Plaintiff is a resident of Chatham County. (Id. at pp. 4, 8.) While the Amended Complaint does not specifically state where the insurance policy was delivered, it makes no mention of any state other than Georgia. Thus, for the purposes of this Motion, the Court finds that the insurance contract was made in Georgia, and that Georgia law applies.

As to Plaintiff's negligence claim, in tort actions, "Georgia continues to apply the traditional choice of law principles of *lex loci delicti*." Willingham v. Glob. Payments, Inc., No. 1:12-CV-01157-RWS, 2013 WL 440702, *14 (N.D. Ga. Feb. 5, 2013). "[T]he rule of *lex loci*

5

*delicti* [] requires application of the substantive law of the place where the tort or wrong occurred."
Carroll Fulmer Logistics Corp. v. Hines, 710 S.E.2d 888, 890 (Ga. Ct. App. 2011). The parties do not dispute that the events giving rise to this action took place in the state of Georgia. Thus, Plaintiff's claim for negligence is governed by Georgia law.[3]

### III. Analysis

#### A. Breach of Contract (Count III)

Plaintiff asserts that St. Paul breached the terms of the insurance policy that it issued him. (Doc. 2-2, p. 13.) "An insurance policy is simply a contract . . . . " Hunnicutt v. S. Farm Bureau Life Ins. Co., 351 S.E.2d 638, 639 (Ga. 1987) (citation and internal quotation marks omitted). "'The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken.'" Dewrell Sacks, LLP v. Chicago Title Ins. Co., 749 S.E.2d 802, 806 (Ga. Ct. App. 2013) (quoting Canton Plaza, Inc. v. Regions Bank, Inc., 732 S.E.2d 449, 454 (Ga. Ct. App. 2012)).

With regards to the first element, a plaintiff must point to the contractual provision that a defendant is alleged to have breached. See Brazell Holdings, LLC v. USI Ins. Servs. Nat'l, Inc., 378 F. Supp. 3d 1253, 1265 (S.D. Ga. 2019) ("[A] plaintiff asserting a breach of contract claim must allege a particular contractual provision that the defendants violated to survive a motion to dismiss.") (citation omitted). Plaintiff's Amended Complaint identifies two contractual provisions that placed obligations on St. Paul. (Doc. 2-2, p. 9.) St. Paul had to both defend Plaintiff in the Renewal Action and indemnify him for his losses. (Id.) Georgia law has long held that these duties can exist under contract. See Utica Mut. Ins. Co. v. Kelly & Cohen, Inc., 504 S.E.2d 510,

---

[3] Moreover, because the parties have only argued Georgia law and have not offered the substantive law of any other state, Georgia law applies. See Int'l Ins. Co. v. Johns, 874 F.2d 1447, 1458 n.19 (11th Cir. 1989) ("[B]ecause the parties failed to consider the choice of law in this diversity case, we must presume that the substantive law of the forum [] controls.") (citation omitted).

6

512 (Ga. Ct. App. 1998) ("As a general rule, 'the duty to defend is determined by the contract . . . .'") (citation omitted); Giordano v. Fed. Land Bank of Columbia, 294 S.E.2d 634, 636 (Ga. Ct. App. 1982) ("'[T]he duty to indemnify may arise from some express or implied agreement to indemnify . . . .'") (quoting S. Nitrogen Co. v. Stevens Shipping Co., 151 S.E.2d 916, 920 (Ga. Ct. App. 1966), *superseded on other grounds by* O.C.G.A. § 51-12-32).

Plaintiff further alleges that St. Paul "breached this agreement when [it] ceased funding the defense" and "[b]y failing to cover" the losses he sustained from the six-million-dollar consent judgment ordered against him. (Doc. 2-2, p. 13.) Plaintiff has thus identified two specific contractual provisions that St. Paul allegedly breached, and this is enough to survive a motion to dismiss. See Cohen v. State Farm Fire & Cas. Co., No. 1:17-CV-2306-MHC, 2018 WL 9814646, at *10 (N.D. Ga. Dec. 21, 2018) ("The duty to defend and the duty to indemnify are separate and independent obligations.").

St. Paul contends that Plaintiff's contractual claim must fail because he does not allege "facts explaining the circumstances of St. Paul's withdrawal." (Doc. 13, p. 8.) However, this argument is not appropriate at this stage of the litigation. Plaintiff may be unaware why St. Paul decided to withdraw or he may dispute any grounds offered by St. Paul. Such factual issues can be furthered developed through discovery. Moreover, St. Paul has failed to establish that Plaintiff had an affirmative duty to plead such matters in his Amended Complaint. Furthermore, as the Amended Complaint plausibly alleges that St. Paul had a duty to indemnify Plaintiff (in addition to providing for his defense) and did not do so, the Court is satisfied that Plaintiff has alleged a breach even without asserting why Defendant stopped paying for his defense. See nVision Glob. Tech. Sols., Inc. v. Cardinal Health 5, LLC, No. 1:11–cv–0389–WSD, 2012 WL 13006063, at *4 (N.D. Ga. Jan. 10, 2012) (plaintiff sufficiently pled a breach of contract claim by alleging among

other things that the defendant "had a duty under the terms of the contract to perform specific duties" and then did not complete them).

For the second element—damages—Plaintiff alleges that because St. Paul stopped funding his defense, the court in the Renewal Action entered a six-million-dollar consent judgment against him. (Doc. 2-2, p. 13.) When one party breaches a contract "and the other party is damaged thereby, compensation for actual damages is a right and remedy available to the damaged party by law unless the contract provides otherwise." Centex-Rodgers Constr. Co. v. McCann Steel Co., 426 S.E.2d 596, 597 (Ga. Ct. App. 1992). "Damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of its breach." O.C.G.A. § 13-6-2. Here, Plaintiff sufficiently alleges that he had to accept a consent judgment because he could no longer pay for his defense which was a direct result of St. Paul's breach. (Doc. 2-2, p. 13.) In addition to the monetary costs of the consent judgment, Plaintiff alleges harm to his credit and mental and physical wellbeing. Id. Georgia law provides that "[r]emote or consequential damages are not recoverable unless they can be traced solely to the breach of the contract or unless they are capable of exact computation . . . ." O.C.G.A. § 13-6-8. Taking the Amended Complaint's allegations as true as the Court must at this stage of the litigation, the Plaintiff has adequately pled that St. Paul's breach directly and solely harmed his credit and wellbeing. Thus, the Court finds that Plaintiff has made out the damages element of his claim.

Finally, by asserting that he was insured under the policy, Plaintiff sufficiently meets the third element—that he has a right to complain about the breach. Accordingly, Plaintiff has sufficiently established a breach of contract claim, and Count III will stand against St. Paul.

### B. Negligence (Count II)

Plaintiff also alleges that St. Paul is liable for negligence because it knew or reasonably should have known that the Renewal Action was likely to expose Plaintiff to liability yet St. Paul "failed to take reasonable action to resolve [the] matter and to protect [him]." (Doc. 2-2, p. 12.) St. Paul argues that it cannot be held liable for negligence because any potential obligation it had to Plaintiff "would exist under the terms of the policy only and not in tort." (Doc. 13, p. 11.)

The United States Court of Appeals for the Eleventh Circuit has recognized that "[u]nder Georgia law, a plaintiff may not sue in tort for a defendant's mere breach of a duty imposed by a contract." Delancy v. St. Paul Fire & Marine Ins. Co., 947 F.2d 1536, 1545 (11th Cir. 1991) (citing Sheppard v. Yara Eng'g Corp., 281 S.E.2d 586, 587 (Ga. 1981)). However, a tort action is appropriate in addition to a breach of contract claim where a party "violates a duty owed to a plaintiff independent of contract to avoid harming him. Such an independent harm may be found because of the relationship between the parties, or because of defendant's calling or because of the nature of the harm." Sheppard, 281 S.E.2d at 587 (citations omitted). In the context of insurance contracts, Georgia law recognizes that an insurer can be independently liable for negligently failing to settle a claim. See Delancy, 947 F.2d at 1547–48 (although early "Georgia law is ambiguous" based on more recent cases, the Eleventh Circuit held that "negligent, as well as bad faith, failure to settle is actionable in Georgia"). However, the Georgia Supreme Court recently clarified that "an insurer's duty to settle arises *only* when the injured party presents a valid offer to settle within the insured's policy limits." First Acceptance Ins. Co. of Ga., Inc. v. Hughes, 826 S.E.2d 71, 75 (Ga. 2019) (emphasis added).

Plaintiff argues that its negligence claim is based on St. Paul's "control of the defense" and "allocation of resources" before it allegedly stopped defending him. (Doc. 20, p. 12.) According

9

to the Amended Complaint, St. Paul's only alleged conduct during that time span was not resolving the Renewal Action through settlement. (Doc. 2-2, pp. 10, 12.) Plaintiff's Amended Complaint does assert that the plaintiffs in the Renewal Action "made numerous demands for settlement." (Doc. 2-2, p. 10.) However, Plaintiff does not allege that during the Renewal Action the plaintiffs presented to St. Paul a valid settlement offer that existed within the policy limits. Without this essential allegation, Plaintiff has failed to plausibly assert that St. Paul had a duty to settle. See First Acceptance Ins., 826 S.E.2d at 75. Because Plaintiff has failed to allege facts giving rise to a duty by St. Paul to settle, it cannot be said that St. Paul breached that duty. Put another way, Plaintiff has failed to plausibly allege that St. Paul acted negligently by not taking the necessary steps to settle or by failing to communicate with Plaintiff about potential (but not offered) settlement options. Accordingly, the Court **DISMISSES** Count II of Plaintiff's Amended Complaint. (Doc. 2-2, p. 12.)

### C. Plaintiff's Bad Faith Claim and Remedies (Counts I, IV, and V)

Plaintiff seeks both attorneys' fees under O.C.G.A. § 13-6-11 and punitive damages. (Doc. 2-2, p. 14.) Under O.C.G.A. § 13-6-11, attorneys' fees are appropriate "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense . . . ." In addition, for punitive damages to be appropriate "there must exist some evidence of culpable tortious conduct, and such culpable conduct must be of such nature to justify the imposition of punitive damages to penalize, punish, or deter such conduct." Taylor v. Powertel, Inc., 551 S.E.2d 765, 768 (Ga. Ct. App. 2001).

In order to meet the bad faith requirement for his damages claims, Plaintiff also asserts a bad faith failure to defend claim. (Doc. 2-2, pp. 11–12.) Plaintiff essentially reasserts his breach of contract claim and states that St. Paul's failure to continue paying for his defense was in bad

faith. (Id. at p. 11.) However, Plaintiff points to nothing to indicate St. Paul had a duty independent and apart from its contractual obligation that would provide a basis for this claim. The Court's review of Georgia law also finds no legal grounds for an extra-contractual claim based on St. Paul allegedly no longer paying for Plaintiff's defense. See Penn-America Ins. Co. v. Disabled Am. Veterans, 481 S.E.2d 850, 851 (Ga. Ct. App. 1997) ("Whether an insurer is obligated to defend an action against its insured 'is determined by the contract . . . .'"). Indeed, the Court of Appeals of Georgia has upheld dismissing allegations against insurance companies when "the breach of duty asserted did not arise independent of the contract." Leader Nat'l Ins. Co. v. Smith, 339 S.E.2d 321, 329 (Ga. Ct. App. 1985).[4] Accordingly, the Court **DISMISSES** Count I.

In addition, even if Plaintiff could assert a bad faith failure to defend claim, Plaintiff could still not seek damages under O.C.G.A. § 13-6-11. Under Georgia law, "[t]he penalties contained in OCGA § 33-4-6 [(not O.C.G.A. § 13-6-11)] are the exclusive remedies for an insurer's bad faith refusal to pay insurance proceeds." Howell v. S. Heritage Ins. Co., 448 S.E.2d 275, 276 (Ga. Ct. App. 1994); see also Adams v. Unum Life Ins. Co. of Am., 508 F. Supp. 2d 1302, 1319 (N.D. Ga. 2007) ("Georgia case law, however, clearly establishes that O.C.G.A. § 33–4–6 is the exclusive remedy for an insurer's bad faith refusal to pay insurance proceeds, and that claims for attorney's fees and litigation expenses under other Georgia statutes are not authorized."); Globe Life & Accident Ins. Co. v. Ogden, 357 S.E.2d 276, 278 (Ga. Ct. App. 1987) ("We do not read [Georgia caselaw] as allowing any punitive damages other than those specifically prescribed in OCGA § 33–4–6."). Since Plaintiff's Amended Complaint does not allege damages under O.C.G.A. § 33-

---

[4] Plaintiff's bad faith claim also asserts that St. Paul acted in bad faith by failing to settle the case and not communicating with Plaintiff about potential settlements. (Doc. 2-2, p. 12.) However, as this Court has already explained, Plaintiff does not allege that the plaintiffs in the Renewal Action ever presented St. Paul with a settlement offer within the policy limits. Without such an assertion, Plaintiff has failed to allege that St. Paul had a duty to settle, and these claims fail for the same reason that Plaintiff's negligence claim fails.

4-6, he would be unable to seek attorneys' fees and punitive damages even if he had a cognizable bad faith claim.

Plaintiff argues that O.C.G.A. § 13-6-11 is still applicable to damages for his negligence claim. (Doc. 20, pp. 12–13.) However, for the reasons discussed above, Plaintiff has not sufficiently pled facts for his negligence claim to survive. For all these reasons, Plaintiff's claims for attorneys' fees and punitive damages fail. Therefore, the Court **DISMISSES** Counts IV and V.

## **CONCLUSION**

In light of the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** St. Paul Mercury Insurance Company's Motion to Dismiss. (Doc. 13.) The Court **DISMISSES** Counts I, II, IV, and V against St. Paul Mercury Insurance Company. (Doc. 2-2.) Count III will stand against this Defendant. In addition, the Court **GRANTS** Plaintiff's Motion for Dismissal of Less Than All Defendants, (doc. 24.), and **DENIES AS MOOT** Travelers Insurance Group Holdings, Inc. and Travelers Insurance Group Holdings, Inc. d/b/a Travelers Insurance Company's Motion to Dismiss, (doc. 14).

Finally, the Court **LIFTS** the stay of discovery, (doc. 34), that was imposed pending the Court's resolution of the Motion to Dismiss. Counsel shall conduct a Rule 26(f) Conference within twenty-one (21) days of the date of this Order and shall file a report of that conference within seven (7) days of the date of the conference. In conducting their conference and filing their report, counsel shall pay careful attention to and shall comply with the Court's Rule 26 Instruction Order, (doc. 3).

**SO ORDERED**, this 8th day of April, 2020.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA